FILED
CLERK, U.S. DISTRICT COURT

3/10/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_\_VAM\_\_\_\_\_ DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DANIEL G. BOYLE (Cal. Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2426/0698
     Facsimile: (213) 894-3713
     E-mail:    daniel.boyle2@usdoj.gov
                jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:22-cr-00081-MWF |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT CELEBRITY FINANCIAL LLC |
| v. | |
| Celebrity Financial LLC, dba "Sherman Oaks Check Cashing I, LP," | |
| Defendant. | |

1.  This constitutes the plea agreement between CELEBRITY FINANCIAL LLC, doing business as, "Sherman Oaks Check Cashing I, LP" ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Failure to Maintain an Effective Anti-Money Laundering Program, in violation of 31 U.S.C. §§ 5318(h)(1), 5322(b).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Recommend that defendant be sentenced to a fine in an amount no less than $500,000 and not to argue, or suggest in any way, either orally or in writing, that a lower fine amount be imposed.

## THE USAO'S OBLIGATIONS

3. The USAO agrees to:

   a. Not contest facts agreed to in this agreement.

   b. Abide by all agreements regarding sentencing contained in this agreement.

   c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

   d. Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for any additional violations known to the USAO at the time of the plea arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

## NATURE OF THE OFFENSE

4. Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, Failure

to Maintain an Effective Anti-Money Laundering Program, in violation of Title 31, United States Code, Sections 5318(h)(1), 5322(b) the following must be true:

    (1) defendant was a money services business located in the United States;

    (2) defendant failed to implement one or more of the following minimal requirements set forth by regulation by the Secretary of the Treasury:

        (i) policies, procedures, and internal controls regarding verifying customer identification, filing reports required for money services businesses, creating and retaining records;

        (ii) the designation of a person to assure day to day compliance with anti-money laundering controls, including assuring that the money services business properly files reports as required by law and providing appropriate training and education;

        (iii) providing education of appropriate personnel concerning responsibilities under anti-money laundering program; or

        (iv) providing for independent review to monitor and maintain an adequate anti-money laundering program; and

    (3) defendant acted willfully in failing to develop, implement, and maintain an effective anti-money laundering program.

## PENALTIES

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 31, United States

Code, Sections 5318 and 5322(b), is: ten years' probation; a fine of $500,000; and a mandatory special assessment of $400 under 18 U.S.C. § 3013(a)(2)(B).

### FACTUAL BASIS

6. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 8 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Throughout the relevant time period, defendant was a domestic financial institution, as defined in 31 U.S.C. § 5312(a)(2). Defendant was aware that the BSA required defendant to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent its services from being used to facilitate money laundering, by, among other elements, having effective written policies and procedures for verifying customer identification, determining whether Currency Transaction Reports ("CTRs") and Suspicious Activity Reports ("SARs") needed to be filed, and having internal controls and independent testing to assure compliance.

Although defendant had written policies and procedures as required by the BSA, defendant failed to implement and maintain key portions of the program. Defendant acted willfully in failing to implement and maintain an effective anti-money laundering program,

5

and acted with knowledge that such failures were unlawful.  For example, defendant encouraged customers to bring large business checks, far in excess of $10,000, to defendant, and defendant and its agents told its customers that it would not file CTRs.  As a result, as defendant then knew and suspected, many of its customers brought checks that were proceeds of unlawful activity, including but not limited to customers K.A. and E.K. who presented and cashed at least $18,350,628.00 in checks with defendant, which defendant knew or suspected were proceeds from the operation of an unlawful sports gambling enterprise.

Defendant, through its managers and agents, was also aware that the Bank Secrecy Act ("BSA") required financial institutions such as itself to file CTRs with the Department of Treasury, including for any transaction involving more than $10,000 in currency on a single day. Pursuant to 31 CFR 1010.312, the BSA required defendant to identify and record the name and address of the individual presenting a transaction, as well as record the social security or taxpayer identification number of any person or entity on whose behalf such transaction is to be effected.  Defendant, however, repeatedly failed to do so.

"Runners" of the above-described unlawful sports gambling business would bring in checks, but they were not the payees whose names were on the checks. The checks were endorsed before they were brought in, and defendant's managers and agents did not know if the payees were actually signing the checks.  Defendant's managers and agents believed the checks were from the operation of unlawful sports gambling based on conversations with K.A.

Defendant was also aware that the BSA required financial institutions such as itself to file a SAR with the Department of Treasury for a transaction conducted or attempted involving at least $5,000 in funds or other assets, where the financial institution knew, suspected, or has reason to suspect that the transaction (or a pattern of transactions of which the transaction was a part): (1) involves funds derived from illegal activity or was intended or conducted in order to hide or disguise funds or assets derived from illegal activity as a part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement under federal law or regulation; (2) was designed, whether through structuring or other means, to evade any requirements of this part or of any other regulations promulgated under the BSA; (3) had no business or apparent lawful purpose or was not the sort in which the particular customer would normally be expected to engage, and the financial institution knew of no reasonable explanation for the transaction after examining the available facts; or (4) involved the use of the financial institution to facilitate criminal activity.

Defendant, however, knowingly and willfully failed to file SARs for financial transactions that it knew it was required to report. For example, on or about September 9, 2020, E.K. presented two checks to defendant that were less than $10,000 each, but greater than $10,000 in the aggregate.  E.K. asked an employee of defendant if defendant would report the transaction, and the employee told E.K. that defendant would not report the transaction. E.K. then tipped the employee $100.00, which the employee accepted without comment.  As defendant then knew and understood, E.K. requested that defendant not file a CTR and intended to evade the reporting requirements.

Defendant, however, did not file a SAR even though it knew it was required to file the report pursuant to 31 CFR § 1022.320(a)(2).

The pecuniary gain to defendant based on the above-described conduct was no less than $500,000.

## SENTENCING FACTORS

7.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

8.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | USSG § 2S1.3(a)(1) |
| Proceeds of Unlawful Activity: | +2 | USSG § 2S1.3(b)(1) |
| Violations of BSA >$100K in 12 months: | +2 | USSG § 2S1.3(b)(2) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

9. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

10. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

11. Defendant understands that by pleading guilty, defendant gives up the following rights:

   a. The right to persist in a plea of not guilty.

   b. The right to a speedy and public trial by jury.

   c. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   d. The right to confront and cross-examine witnesses against defendant.

   e. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

   f. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

12. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes,

but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

13. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than five years' probation defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the fine imposed by the Court, provided it is within the statutory maximum; and (c) the term of probation imposed by the Court, provided it is within the statutory maximum.

14. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

15. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up

all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

16. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

17. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

18. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

19. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

20. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

recommendations or the parties' agreements to facts or sentencing factors.

21. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 8 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

22. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

23. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

24. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

*Dan Boyle*                                              3/4/2022
DAN G. BOYLE                                             Date
Assistant United States Attorney

[signature]                                              2/23/2022
Authorized Agent of Defendant                            Date
CELEBRITY FINANCIAL LLC

[signature]                                              2/24/22
MARK GERAGOS                                             Date
Attorney for Defendant
CELEBRITY FINANCIAL LLC

## CERTIFICATION OF DEFENDANT

I am the authorized agent for CELEBRITY FINANCIAL LLC, doing business as, "Sherman Oaks Check Cashing I, L.P." ("SOCC"), and I have authority to sign and bind SOCC. On behalf of SOCC, I certify the following:

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with SOCC's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with SOCC's attorney, and SOCC's attorney has advised me of SOCC's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to SOCC other than those contained in this agreement. No one has threatened or forced SOCC in any way to enter into this agreement. I am satisfied with the representation of SOCC's attorney in this matter, and I am pleading guilty because SOCC is guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     2/23/2022
Authorized Agent of Defendant       Date
CELEBRITY FINANCIAL LLC

1                     CERTIFICATION OF DEFENDANT'S ATTORNEY

2     I am SOCC's attorney.  I have carefully and thoroughly discussed
3 every part of this agreement with my client.  Further, I have fully
4 advised my client of its rights, of possible pretrial motions that
5 might be filed, of possible defenses that might be asserted either
6 prior to or at trial, of the sentencing factors set forth in 18
7 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and
8 of the consequences of entering into this agreement.  To my
9 knowledge: no promises, inducements, or representations of any kind
10 have been made to my client other than those contained in this
11 agreement; no one has threatened or forced my client in any way to
12 enter into this agreement; my client's decision to enter into this
13 agreement is an informed and voluntary one; and the factual basis set
14 forth in this agreement is sufficient to support my client's entry of
15 a guilty plea pursuant to this agreement.

16                                                                         2/24/22

17 MARK GERAGOS                                          Date
   Attorney for Defendant
18 CELEBRITY FINANCIAL LLC

16

# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          CR No. 22-

          Plaintiff,               I N F O R M A T I O N

     v.                            [31 U.S.C. §§ 5318(h)(1), 5322(b):
                                   Failure to Maintain an Effective
CELEBRITY FINANCIAL LLC,           Anti-Money Laundering Program]
   dba "Sherman Oaks Check
     Cashing I, LP,"

          Defendant.
```

The United States Attorney charges:

[31 U.S.C. §§ 5318(h)(1), 5322(b)]

Beginning on an unknown date and continuing until on or about February 7, 2020, within the Central District of California, and elsewhere, defendant CELEBRITY FINANCIAL LLC, doing business as, "Sherman Oaks Check Cashing I, LP" ("SOCC"), a domestic financial institution, willfully violated the Bank Secrecy Act, Title 31, United States Code, Sections 5318 and 5322 and regulations issued thereunder, specifically, Title 31, Code of Federal Regulations, Section 1022.210, by failing to develop, implement, and maintain an effective anti-money laundering program.

Specifically, defendant SOCC willfully failed to implement and maintain effective policies, procedures, and internal controls for: (1) preventing the money services business from being used to facilitate money laundering commensurate with the risks posed by nature and volume of the financial services provided by the money services business; (2) filing Currency Transaction Reports for currency transactions in excess of $10,000; (3) verifying customer identification, in particular as to those customers conducting currency transactions in excess of $10,000 in currency in a single day; and (4) filing Suspicious Activity Reports for transactions over $2,000 involving funds that defendant knew, suspected, or had reason to suspect that the transaction involved use of the money services business to facilitate criminal activity.

Defendant SOCC took actions intended to undermine the implementation and maintenance of an effective anti-money laundering program, in that its employees: (1) encouraged SOCC customers to bring large business checks to SOCC and told them SOCC would not file Currency Transaction Reports; (2) failed to enter all parties and customer information in currency transaction reports; and (3) failed to file Suspicious Activity Reports for transactions over $2,000 that

//
//
//

SOCC knew, suspected, and had reason to suspect that the transaction involved use of its business to facilitate criminal activity, namely, the operation of an unlawful gambling business.

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

DAN G. BOYLE
Assistant United States Attorney
Asset Forfeiture Section

JEFF MITCHELL
Assistant United States Attorney
Major Frauds Section